BOWES, Judge.
Plaintiff, Roy Collins, appeals a decision of the trial court dismissing his petition for damages against defendants, First Baptist Church of Kenner, officers and Board of Directors, L.N. Benton, W.O. Davis, and E.C. Benton, and Preferred Risk Insurance Companies. We affirm the judgment of the trial court.
In April 1979, the First Baptist Church of Kenner contracted with a general contracting firm, Claiborne Builders, Inc., to expand its sanctuary and to develop a courtyard on the church property.
As part of the project, Claiborne sub-contracted the needed air-conditioning work to Ackerman Refrigeration, the plaintiff’s employer. On August 29, 1979, Roy Collins and a fellow Ackerman employee, Roy For-tunia, were installing air-conditioning duct work in the attic of the church sanctuary. Collins and Fortunia had finished the particular task undertaken in the area of the attic near the “sound room” and, after gathering up his tools, Mr. Collins started to exit the attic. As he proceeded from his work area to the attic entrance, Mr. Collins fell through a light fixture in the sanctuary ceiling to the pews below, injuring his knee. Plaintiff alleged that his fall resulted from stepping on an attic beam that broke and/or that the church was negligent in not providing planking or adequate lighting in the attic for the workers.
The defendants contended that no beam broke and that plaintiff’s injury resulted from his own negligence in attempting to balance on ceiling beams with his hands full of tools and in losing his balance causing him to fall thru the light fixture. Defendants also contended that plaintiff assumed the risk of his injury and, further, that the attic was under the complete control and custody of the general contractor and his subcontractors, who were totally responsible for the working conditions of their employees.
Of the four witnesses who testified at trial concerning Mr. Collins’ accident, only the plaintiff, himself, stated that unequivocally his fall was caused by the breaking of a structural support beam. However, Mr. Collins went on to testify that he neither saw a rafter break, nor did he ever return to the attic to inspect the damage.
Roy Fortunia, the plaintiff’s co-worker in the attic at the time of the accident, testi *205 fied that he and Mr. Collins had been working in the attic for approximately two weeks preceding the accident. He stated that he did not see Mr. Collins fall, but only heard the noise. On direct examination, Mr. Fortunia said that following the accident he went downstairs to the church to where Mr. Collins landed and, from that position, he observed a 2 x 4, or a 2 x 6, board hanging from the hole where the light fixture had been. But, under cross-examination, he testified that the board he saw dangling from the ceiling after the accident was not a beam or joist but a header of the frame around the light. He further stated that he did not go back into the attic to see if any other board was broken.
Reverend Tom Hodge, who was the assistant pastor of the First Baptist Church of Kenner at the time of the accident, testified that he arrived on the scene shortly after Mr. Collins’ fall (he was summoned from his office in another building) and that, after arranging for an ambulance for the plaintiff, he went up into the attic to inspect the damage. Reverend Hodge declared that he saw no broken boards during his inspection of the attic and that only the area around the light fixture needed to be repaired.
Finally, Jerry Lemoine, the vice-president of Claiborne Builders, testified that after being informed of the accident, he went to the church and personally inspected the damage to the ceiling. He stated that he found no broken boards and that the repair work performed consisted of replacement of the light fixture, patching of the area immediately surrounding the light fixture, and painting the repaired portion of the ceiling. In connection with his testimony, he produced a bill from Claiborne to Acker-man for the damages which resulted from Mr. Collins’ fall. The repair work done by Claiborne Builders was charged to Acker-man Refrigeration and not to the church. This “field charge” and an attached letter of explanation was introduced into evidence by the defendants as their exhibit number two.
Appellant assigns the following three specifications of error:
1. The trial court committed manifest error in considering the pre-amendment wording of pleadings which were later amended.
2. The trial court committed manifest error in admitting evidence requested by plaintiff but denied by the defendant.
3. The trial court committed manifest error in ignoring the clear weight of evidence proving the “ruin” and the liability of the defendants.
Appellant’s assignment number one alludes to the following statement made by the trial judge in his reasons for judgment: “On or about August 29, 1979, in his original petition, plaintiff alleges that while gathering up tools, plaintiff tripped over various boards negligently and hazardously located in the attic of the church where he was working.”
Our examination of the record clearly shows that the above statement standing alone is out of context, as the trial judge continued as follows: “Plaintiff’s amended petition states that the issue at hand is whether there was a ‘collapsing, giving way or falling’ of a part of the attic floor so as to constitute “ruin” as contemplated by La.C.C. Art. 2322. Plaintiff claims that the “ruinous condition” included the attic floor/church ceiling which allegedly broke, causing plaintiff to fall and injure himself.” Obviously, the trial judge was simply reciting all allegations presented by the plaintiff and we find no significance in this practice. Plaintiff’s first assignment is completely without merit.
The evidence referred to in plaintiff’s assignment number two is the bill or “field charge” (Defendant’s Exhibit $2) sent from Claiborne Builders to Ackerman Refrigeration reflecting the repairs (and the charges for same) necessitated by Mr. Collins’ fall through the ceiling. We find no evidence in the record that the defendant (the church) had any knowledge of this document until immediately before trial. *206 The bill was initiated by the general contractor and sent to his subcontractor. This was handled internally between contractors and did not involve defendants herein. The trial transcript (pp. 63-65) reflects that the trial judge heard argument from both counsel on whether or not he would admit the document. Under the circumstances (counsel for plaintiff had ample opportunity to cross-examine Mr. Lemoine, the originator of the bill), the trial judge decided to admit the evidence. Therefore, we find plaintiff’s assignment number two is also lacking in merit.
The issue presented in appellant’s last assignment of error is whether the trial court committed manifest error in finding that plaintiff failed to carry his burden of proof that his fall was caused by the “ruin” of the church attic.
The liability of the owner of a building is governed by Article 2322 of the Louisiana Civil Code, which provides:
The owner of a building is answerable for the damage occasioned by its ruin when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
The Louisiana Supreme Court in Entrevia v. Hood, 427 So.2d 1146 (La.1983), defined the elements of proof required to impose strict liability on a building owner. The Court stated:
In order to recover in strict liability in Article 2317 or 2322 against the owner of a building, the injured person must prove that the building posed an unreasonable risk of injury to others, and that his damage occurred through this risk.
In the present case, the issue of “ruin” clearly turns on the weight and credibility accorded to the testimony of the witnesses by the trial judge. Two of the witnesses (Rev. Hodge and Jerry Lemoine) testified overwhelmingly in favor of the defendants. The testimony of one witness (Mr. Fortu-nia) was inconsistent. But, overall, it could not be labeled “adverse” to the defendants. Only the plaintiff’s testimony was clearly adverse to the defendants’ claims and favorable to his own cause.
The perspicacious trial judge observed, “The court does not find sufficient evidence to support Plaintiff’s claim of a ‘ruinous condition’ of the building; therefore, neither Louisiana Civil Code Article 2317 nor Article 2322 apply in this instance and a strict liability situation does not exist.” We find no error in his conclusion.
Accordingly, the judgment of the trial court is affirmed. Each side is to bear its own costs in this appeal.
AFFIRMED.